**Robert J. DOODY, Plaintiff,**

v.

**Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 60–C–1184.**

United States District Court
E. D. New York.

Sept. 10, 1962.

Joseph P. Hoey, U. S. Atty., by Kalman V. Gallop, Asst. U. S. Atty., for defendant, for the motion.

Hyman Goodman, New York City, for plaintiff, in opposition.

RAYFIEL, District Judge.

The defendant moves under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment in his favor.

This is an action under Section 205(g) of the Social Security Act (Title 42 U.S.C.A. § 405(g)) to review and reverse the decision of the defendant denying him childhood disability insurance benefits under Section 202(d) of the said Act (Title 42 U.S.C.A. § 402(d)).

I have read the transcript of the proceedings before the Social Security Administration, including the transcript of

the hearing before George C. Allen, Hearing Examiner, dated June 3, 1960.

It appears from the record that the plaintiff is now confined in the Veterans Administration Hospital at Northport, Long Island, New York, and from the report of that institution, dated December 16, 1958, that he was suffering from schizophrenic reaction, paranoid type, and was "considered incompetent by Medical Staff at this hospital." Hence, this action should have been brought by his next friend or a guardian ad litem appointed for that purpose pursuant to Rule 17(c) of the Federal Rules of Civil Procedure. In the light of this decision, however, that procedure will not be necessary.

The plaintiff was born on January 18, 1934. He attended various primary schools, public, private and parochial, William J. McKinley Junior High School, and finally Fort Hamilton High School, which he attended from September, 1950 to May, 1952, when he dropped out. During that entire period he had great difficulty in accomplishing his scholastic assignments. Between May 28, 1941 and June 11, 1947 he was treated by Dr. Francis Ferrer for mental retardation, a condition which, according to the doctor's report, dated October 16, 1958, was present since birth.

From 1945 to 1948 he was treated at the New York Hospital out-patient department. The report of that institution, dated October 15, 1958, stated that he was suffering from "mental deficiency March 4, 1946 I. Q. 61." The hospital referred him to St. Charles Guidance Clinic in Brooklyn, where he was treated in 1948. On June 2, 1943, he submitted to a psychological examination at that institution. The report thereon, dated May 3, 1960, states that "Analysis of tests indicated that Robert was intellectually dull. He had a meagre vocabulary; dull comprehension, limited reasoning and ability to generalize."

On August 19, 1952, having withdrawn from high school in May of that year, he enlisted in the United States Marine Corps for four years. The military records received in evidence disclose that on August 29, 1952 he was examined and found physically qualified for enlistment. The "Report of Medical Examination" contains a section marked "Clinical Evaluation", divided into forty-two categories. The last category, designated as "Psychiatric", is marked normal.

His tour of duty was uneventful. He underwent "boot training" at Parris Island, South Carolina, and was then assigned to Camp LeJeune as a member of a Special Weapons Company which handled rocket launchers and flame throwers. He was later assigned to Japan, where he did garrison duty for a period of eighteen months. There was only one untoward incident during his tour of foreign duty. While in Japan he was court-martialed for being asleep on fire watch (guard duty) and served a three months sentence in the brig. After completing his tour of duty overseas he was rotated back to the United States and concluded his enlistment at Quantico, Virginia, where he did menial work as a member of a guard and police detail, whose function it was to patrol the camp grounds and keep them clean. He was released to inactive duty on August 27, 1956.

It was shortly after his discharge that he first manifested signs of mental illness. He was admitted to the Veterans Administration Hospital in Brooklyn, New York, on December 14, 1956, and was discharged on February 19, 1958. In that institution's report his condition is diagnosed as "Schizophrenic Reaction, chronic, undifferentiated type, moderate, manifested by auditory hallucinations, ideas of reference, dissociation of conceptual thinking, anxiety and insomnia." The prognosis was "Guarded" and he was found to be medically competent.

On August 28, 1958 he was admitted to the Veterans Administration Hospital at Northport, Long Island, where, upon examination, he was found to be incompetent and suffering from schizophrenic reaction, paranoid type. He is still confined there.

The Hearing Examiner, in a complete and reasoned decision, denied childhood disability insurance benefits to the claimant. He based his decision largely on the fact that after the plaintiff reached his eighteenth birthday he enlisted in the Marine Corps and successfully completed a four year term of enlistment. At page 6 of his decision (page 10 of the transcript) the hearing officer stated:

"In the opinion of the Hearing Examiner, and he so finds, the child, by his four-year tour of duty with the United States Marine Corps, ending with his honorable discharge, demonstrated an actual ability to engage in substantial gainful activity, within the meaning of the Social Security Act and the Regulations promulgated thereunder. To hold that the competent discharge of the many and manifold responsibilities, duties and tasks imposed upon a member of the Armed Forces for a continuous period of four years is not equivalent in character or value to that performed in civilian employment would create an absurdity. It is patent that the nature and requirements of services performed in the military establishments by enlisted men require in many instances greater aptitude and greater ability, both physical and mental, than that required in many civilian pursuits. The Hearing Examiner therefore finds on the basis of the preponderant weight of the substantial medical and other evidence and upon the entire record of this case that the child had not been precluded from engaging in any substantial gainful activity which he was qualified to perform by reason of his training, education and experience which commenced at a time prior to his attainment of age 18 and continued thereafter without interruption to the time of the filing of the application herein for the establishment of childhood disability insurance benefits on his behalf."

There is much more than the "substantial evidence" necessary to support the decision of the Hearing Examiner. I agree with him that the plaintiff's successful completion of his four year term of enlistment in the Marine Corps "demonstrated an actual ability to engage in substantial gainful activity within the meaning of the Social Security Act and the Regulations promulgated thereunder."

Accordingly, the defendant's motion for summary judgment is granted.